**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**Paul J. FASSER, Jr., Assistant Secretary of Labor, et al., Defendants.**

Civ. A. No. 76–408.

United States District Court, District of Columbia.

Sept. 22, 1976.

Robert M. Weinberg, Michael H. Gottesman, George H. Cohen, Robert M. Tobias, Washington, D. C., for plaintiff.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This complaint seeks review of final agency action and a declaratory judgment. Plaintiff, National Treasury Employees Union ("NTEU"), is the exclusive bargaining agent of some 30,000 public employees of the Treasury Department and the Internal Revenue Service ("IRS"). It challenges, on constitutional grounds, a Decision and Order of the Assistant Secretary of Labor for Labor-Management Relations affirming a finding, made after an administrative hearing, that certain picketing activities sponsored by NTEU constituted an unfair labor practice under Executive Order 11491, which governs labor relations in the federal service. The matter comes before this Court after the Decision and Order was affirmed, on March 3, 1976, by the United States Federal Labor Relations Council. It is now before the Court on cross-motions for summary judgment, and finding no material fact necessary to resolve the controversy in dispute, the Court turns to the merits.

NTEU and IRS were negotiating a new collective bargaining agreement in 1975. An impasse in negotiations was apparent in May of that year and NTEU commenced picketing of IRS Service Centers in Covington, Kentucky, and Brookhaven, New York. It is stipulated that the picketing was to inform the public and IRS employees of the Union's position in the dispute. Entrance ways were not blocked and no work was disrupted. About 100 employees took part when off duty between 11:30 a. m. and 1:30 p. m.[1] The picketing did not take place on Government property, no patrons were deterred from entering, no one refused to cross the picket line, and no effort was made by pickets to affect ingress and egress.

IRS filed an unfair labor practice charge pursuant to Executive Order 11491 which on its face bars any type of picketing during a labor controversy by a Union or its members. Probable cause was found at an initial administrative hearing and a Cease and Desist Order was entered. A full hearing then was held before Chief Administrative Law Judge Gordon who found the Union in violation of § 19(b)(4) of the Executive Order, which provides in pertinent part that

---

1. Picket signs stated: "Alexander ain't so great" and "IRS negotiators can stand Pat, Service Center employees can't." These comments supposedly referred to IRS Commissioner Donald Alexander and Patrick J. Ruttle, Director of the Covington Service Center.

(b) A labor organization shall not—

(4) call or engage in a strike, work stoppage, or slowdown; picket an [Government] agency in a labor management dispute; or condone any such activity by failing to take affirmative action to prevent or stop it; . . .

Judge Gordon concluded that Executive Order 11491 is unambiguous in its terms and is intended to be an absolute prohibition, although he also found that the picketing did not interfere with IRS operations (finding # 6) and that it was "informational picketing" (finding # 9). On appeal, the Assistant Secretary of Labor issued a Decision and Order adopting the findings of fact and ruled NTEU violated § 19(b)(4).

The Decision and Order has a continuing effect. It directs that NTEU refrain from participating in, assisting, or condoning *any* picketing of the IRS during any labor-management dispute. The Union must also post notices to IRS employees notifying them that "WE WILL NOT" picket the IRS during such a dispute.

NTEU attacked the constitutionality of § 19(b)(4) of the Executive Order during the administrative proceedings, claiming that it constitutes a violation of the First Amendment. Judge Gordon declined to rule on the constitutional issue, noting that "administrative bodies must assume the constitutionality of the statutes they administer and that they do not possess the power to declare such statutes unconstitutional. . . ." But he acknowledged the "inherent and substantial constitutional question" presented. Neither the Assistant Secretary nor the Federal Labor Relations Council mentioned the constitutionality of § 19(b)(4).

It is quite clear that picketing is entitled to the protection of the First Amendment. *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 42, 30 L.Ed.2d 48 (1972). It is equally clear the picketing involves, in current terminology, more than "pure speech" because it involves patrolling a particular area for its efficacy, and because the presence of a picket line may induce actions on the part of others irrespective of the content of the communication. *Bakery Drivers Local v. Wohl*, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178 (1942); *Teamsters Union v. Vogt, Inc.*, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1558 (1957). As a mixture of action and expression picketing may be regulated with a somewhat freer hand than some other forms of expression. But the free speech clause of the First Amendment still applies.

When speech and nonspeech elements are combined in the same act, Government regulation is permitted where the following conditions are met: (1) the regulation furthers an important Government interest, (2) the Government interest is unrelated to the suppression of expression, and (3) the incidental restriction of First Amendment freedoms is "no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 376–7, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); *Women's Strike for Peace v. Morton*, 153 U.S.App.D.C. 198, 472 F.2d 1273, 1284 (Wright, J. concurring), 1298 (Leventhal, J. concurring) (1972). Where the Government can further its interest by a lesser restraint at little or no added inconvenience it must do so. *United States v. Robel*, 389 U.S. 258, 267–8, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

There is no doubt that the Government can prohibit picketing which actually interferes with its operation. *Cf. American Radio Assn., AFL–CIO v. Mobile Steamship Assn., Inc.*, 419 U.S. 215, 95 S.Ct. 409, 42 L.Ed.2d 399 (1974); *Teamsters Union v. Vogt, Inc., supra*. Stopping the disruption of Government services justifies an incidental limitation on First Amendment freedoms. Executive Order 11491 can constitutionally prohibit any picketing, whether or not peaceful and informational, that actually interferes or reasonably threatens to interfere with the operation of the affected Government agency. The question here is

whether under the Constitution the Government can bar *all* picketing simply because some picketing may properly be subject to restraint.

 The defendants seek to justify a total picketing ban on the ground that this broad prohibition is necessary to prevent interference with Government business. It is urged that some picketing by its very nature immediately interferes, and that during a labor controversy any type of picketing is always potentially disruptive. The crucial or sensitive nature of a particular Government activity, or other comparable circumstances, on a proper factual showing might well support such a sweeping interdiction. But surely not all Government activity, at all Government offices, requires such broad protection from peaceful picketing. Picketing that is strictly informational, and limited in place and focus, does not in all situations create the probability of interference with Government functions sufficient to justify the limitation on free speech involved here. *Police Dept. of Chicago v. Mosley, supra,* 408 U.S. at 100–101, 92 S.Ct. 42. In many instances, the Government's interest is adequately protected without a total picketing ban since, if any picketing ever interferes with Government business, or has such intent, Executive Order 11491 provides administrative machinery to put a cease and desist order into effect almost immediately.

 *National Association of Letter Carriers v. United States Civil Service Commission,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), is not to the contrary as defendants suggest. There, the Hatch Act's First Amendment restrictions on political activity were upheld to avoid conduct by federal employees which Congress and the Supreme Court concluded would by its very nature corrupt our basic institutions. No comparable interest is suggested here, nor can it be, given the scope and variety of governmental activity that could be affected and the differing forms expression by picketing can take. A potential momentary interference with some limited phase of Government activity cannot be analogized to the vital interests of the Government which were at issue in *Letter Carriers, O'Brien,* or in *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), where the Supreme Court upheld a ban on picketing which attempted to interfere with "the administration of justice."

 The litigants here seek a broad ruling on the constitutionality of the picketing ban in Executive Order 11491. The Court is unwilling to make such a determination given the limited record presented. Indeed, it would be wholly inappropriate to do so. As noted, the Executive Order has a very wide sweep encompassing all unionized federal employees, all federal facilities regardless of size, location or function, and all kinds and degrees of picketing during labor disputes.[2] Moreover, there are no executive findings or administrative rules based on fact or experience that identify the difficulties peaceful informational picketing might be expected to create. It is difficult to determine on the record before the Court why or how any kind of peaceful informational picketing by a Union member during a labor dispute is always to be deemed so potentially disruptive that it must be banned regardless of circumstances. Yet neither can a dividing line between constitutionally permissible and nonpermissible types of picketing be drawn, as plaintiff suggests, by the use of such vague terms as "informational" or "non-informational" picketing. Some types of peaceful informational picketing at certain facilities under certain conditions could easily be disruptive and so injure the Government that a ban could be lawfully imposed. Resolution by declaratory judgment of these broad issues would be wholly inappropriate.

**2.** According to the Civil Service Commission, the Federal Government employed about three million civilian employees (exclusive of postal workers) in May, 1975, and recognizes 37 major unions as bargaining representatives. *Register of Federal Employee Unions,* United States Department of Labor, 1975. It owns, leases or operates over 10,000 civilian facilities across the country, according to Government Services Administration records.

There is need for more facts. And expert judgment must, at least initially, be brought to bear on the problem. The Federal Labor Relations Council may, if it chooses, develop through rulemaking proceedings a record delineating more precisely the nature of the Government interest to be protected under various circumstances. It could consider whether there may be factual grounds for differentiating types of picketing based on the sensitivity of the particular governmental function involved, the location of the picketed facility, the number of pickets, purpose and matters of that kind.

While a declaratory judgment will not be granted, the Court must consider the validity of the Decision and Order against the precise fact situation presented. It appears that in this particular instance the Order unduly intrudes upon free expression. The concerns of the able Administrative Law Judge as to the constitutionality of the Executive Order as applied here were well placed. Certainly in the record before the Court it appears that the absolute ban upon all picketing during any labor controversy contained in the Decision and Order is overly broad and violates the First Amendment when improperly applied. The interests of the Federal Government in the smooth, efficient functioning of IRS Service Centers can be adequately protected by a more limited order.

The Decision and Order of the Assistant Secretary of Labor for Labor-Management Relations must be and, accordingly, is vacated.

SO ORDERED.