September 21, 1979

## 79-69   MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF DEFENSE

### National Guard—Technician Dress and Grooming Regulations—Executive Order No. 11491—Review of Decisions of Federal Labor Regulations Authority

This responds to your request for the opinion of the Department of Justice concerning Federal Labor Relations Council (Council) decisions on the negotiability of National Guard technician dress-and-grooming regulations. The question arose in administrative proceedings instituted by labor organizations on behalf of the technicians. Accompanying the request was a petition to the Attorney General from the Adjutants General of the 50 States, the Virgin Islands, Puerto Rico, and the District of Columbia, and a memorandum in support of their position that the Council's decisions are without legal support. As framed in that memorandum, the questions on which our opinion is requested are whether the Council has jurisdiction to direct negotiations concerning a military regulation applicable only to National Guard technicians and promulgated pursuant to statute by the Department of Defense, and, if so, whether the Council applied an invalid standard of review and thus erroneously determined that the regulation is negotiable.

In our view, the Council did have jurisdiction to determine the negotiability of the regulation in question. Although the method for appealing its decisions is disputed, it does appear that administrative and judicial remedies are available to the dissatisfied party. It would be inappropriate under these circumstances for us to comment on the second question.

## The Background

Executive Order No. 11491 was issued in 1969 to govern labor-management relations in the executive branch of the Federal Government.[1] It established the Federal Labor Relations Council to administer and interpret the order[2] and the Federal Service Impasses Panel (Panel) to settle negotiation impasses.[3] It also set forth guidelines for negotiation of collective bargaining agreements.[4] Section 11(a), as amended prior to 1979, provided:

> (a) An agency and a labor organization that has been accorded exclusive recognition, through appropriate representatives, shall meet at reasonable times and confer in good faith with respect to personnel policies and practices and matters affecting working conditions, so far as may be appropriate under applicable laws and regulations, including policies set forth in the Federal Personnel Manual; published agency policies and regulations for which a compelling need exists under criteria established by the Federal Labor Relations Council and which are issued at the agency headquarters level or at the level of a primary national subdivision; a national or other controlling agreement at a higher level in the agency; and this order.[5]

Generally, the procedures for settling disputes as to negotiability were as follows: if an issue developed whether a proposal was negotiable, either party could seek a determination from the head of the agency concerned.[6] If the agency head determined an issue was not negotiable, a labor organization could appeal this determination to the Council. If, after a Council decision, the parties were unable to settle their differences, either party could request the Federal Service Impasses Panel to consider the matter.[8] Failure to obey a Panel order directing settlement was an unfair labor practice[9] and a complaint could be filed with the Assistant Secretary of Labor for Labor-Management Relations.[10] The Assistant Secretary's

---

[1]This order was amended by Executive Orders Nos. 11616, 11636, 11838, 11901, 12073, 12107, and 12126. Executive Orders Nos. 12107 and 12126 conformed the order to the procedures established by the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7135. Unless otherwise specified, all citations to Executive Order No. 11491 refer to the order as amended prior to Executive Order No. 12107.

[2]Exec. Order No. 11491, § 4.

[3]Exec. Order No. 11491, § 5.

[4]Exec. Order No. 11491, § 11.

[5]This version of § 11(a) appears in Executive Order No. 11838 (Feb. 6, 1975).

[6]Exec. Order No. 11491, § 11(c)(2).

[7]Exec. Order No. 11491, § 11(c)(4).

[8]Exec. Order No. 11491, § 17.

[9]Exec. Order No. 11491, § 19(a)(6).

[10]Exec. Order No. 11491, § 6(a)(4).

decision could be appealed to the Council.[11] A party dissatisfied with the Council's decision on the unfair labor practice could seek relief in a Federal district court.[12]

Title VII of the Civil Service Reform Act, 5 U.S.C. §§ 7101–7135, revised these procedures, but did not affect matters pending as of January 11, 1979, the effective date of the Act:[13]

No provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.[14]

The Council and the Panel have considered numerous cases on the negotiability of the National Guard technician dress and grooming regulations. National Guard technicians are civilians employed full-time for the administration and training of the National Guard and the maintenance and repair of supplies issued to the National Guard or the Armed Forces.[15] Technicians must be members of the National Guard.[16] They are employees of the Department of the Army or the Department of the Air Force,[17] but technician employment and administration are delegated by the Secretaries of these departments to the Adjutants General of the States and territories.[18]

Pursuant to regulatory authority,[19] the Secretaries of the Army and the Air Force have required National Guard technicians to wear military uniforms when performing technician duties, and to comply with grooming standards of the appropriate service.[20] Controversy arose when bargaining units of the National Guard technicians proposed amendments to modify the requirement that uniforms be worn. When National Guard officials refused to negotiate the matter, the unions, following the procedures of Executive Order 11491, requested a determination from the head of the National Guard Bureau. In each case, he determined that negotiation was barred by Bureau regulations. Thereafter, the unions petitioned the Council for review. They argued that negotiation is not barred

---

[11]Exec. Order No. 11491, § 4(c)(1).

[12]*See, e.g., Montana Chapter of Assoc. of Civ. Tech., Inc.* v. *Young,* 514 F.(2d) 1165, 1168 (9th Cir. 1975); *National Treasury Employees Union* v. *Fasser,* 428 F. Supp. 295, 297 (D.D.C. 1976).

[13]The section specifying the effective date is Civil Service Reform Act of 1978, Pub. L. No. 95–454, § 907.92 Stat. 1227.

[14]Civil Service Reform Act of 1978, Pub. L. No. 95–454, § 902(b), 92 Stat. 1224, 5 U.S.C. § 1101 note.

[15]32 U.S.C. § 709(a).

[16]32 U.S.C. § 709(b).

[17]32 U.S.C. § 709(d).

[18]32 U.S.C. § 709(c).

[19]32 U.S.C. § 709(a), relating to the employment of National Guard technicians.

[20]Technician Personnel Manual 200 (213.2), Subchapter 2–4, provides in part: "Technicians in the excepted service will wear the military uniform appropriate to their service and federally recognized grade when performing technician duties and will comply with uniform standards of the services."

because, one, the regulation was not issued at or above the level of a primary national subdivision of the agency, and two, no compelling need for the regulation exists. The Council found that the National Guard Bureau is a primary national subdivision of the Department of Defense within the meaning of section 11(a) of the order, but that no compelling need existed for the regulations in question.[21] It decided, therefore, that the proposals of the union were subject to negotiation.

In most of these cases, the parties still could not reach an agreement. The unions requested the Federal Service Impasses Panel to consider the negotiation impasses. The Panel issued recommendations that the parties adopt language in their agreements that the employees should have the option of wearing either a uniform or an agreed-upon standard civilian attire, and that the parties should agree upon exceptions to cover occasions on which the wearing of the military uniform may be required.[22] When these suggestions were rejected, the Panel issued orders directing the parties to adopt the Panel's recommended language in their agreements.[23] Some of these cases are still pending before the Panel.

## Discussion

It is our opinion that the Council had the authority under Executive Order No. 11491 to determine the negotiability of the dress-and-grooming regulations. That order explicitly gave the Council authority to resolve negotiability disputes.[24] It applied, with certain exceptions, to all employees and agencies of the executive branch.[25] It does not appear to us that any of the exceptions are relevant here. The Adjutants General contend that the exception provided in § 3(b)(3) of the order removes them from its application. This section provides:

(b)   This Order * * * does not apply to—

(3)   any other agency, or office, bureau, or entity within an agency, which has as a primary function intelligence, investigative, or security work, when the head of the agency determines, in his sole judgment, that the Order cannot be applied in a manner consistent with national security requirements and considerations * * * .

---

[21]See Council Consolidated Decision on Negotiability Issues, Nos. 76A-16, 76A-17, 76A-40, 76A-43, 76A-54 (Jan. 19, 1977); Consolidated Decision on Negotiability Issues, Nos. 76A-75, 76A-76, 76A-84 (Jan. 19, 1977).

[22]See, e.g., Panel Reports and Recommendations for Settlement, In the Matter of State of New York and New York Council Assoc. of Civilian Tech. Inc., 78 FSIP 32 (Sept. 28, 1978); In the Matter of Penn. National Guard and Penn. State Council Assoc. of Civilian Technicians, Inc., 77 FSIP 29 (Jan. 20, 1978); In the Matter of Kansas Army Nat'l Guard and Local R14–87, Nat'l Assoc. of Gov't Employees, 77 FSIP 30 (Nov. 2, 1977); In the Matter of Mass. Air National Guard and Local 3004, AFL-CIO, 77 FSIP 18 (Aug. 26, 1977).

[23]See, e.g., Decisions and Orders, In the Matter of Mass. Army Nat'l Guard and Local 1629, Nat'l Federation of Federal Employees, 77 FSIP 31 (Aug. 22, 1978); In the Matter of Oregon Army/Air Nat'l Guard and Local 2986, AFL-CIO, 77 FSIP 53 (Aug. 22, 1978); In the Matter of California Nat'l Guard and Local R12–105, Nat'l Assoc. of Gov't Employees, 77 FSIP 70 (April 13, 1977).

[24]Exec. Order No. 11491, §§ 4(c)(2), 11(c)(4).

[25]Exec. Order No. 11491, §§ 2(a), 3(a).

The Adjutants General reason that they, as heads of their agencies, have determined that the wearing of the uniform by the technicians is required as a matter of security and that this determination cannot be reviewed by the Council because it is left to the "sole judgment" of the agency head. We disagree because the National Guard does not have as its primary function "intelligence, investigative or security work." The primary function of the National Guard is to maintain and assure the strength and organization of reserve components of the Armed Forces.[26] This is not the type of security work excepted from the order. The maxim *noscitur a sociis* (a word is known by the company it keeps) applies here to limit the term "security work" to the type of work associated with intelligence and investigative work.[27]

Whether the Council applied an invalid standard of review is not a matter for the Department of Justice to determine. Under the order, the Council is the final administrative authority.[28] There is no right to appeal to the Attorney General, and it would be inappropriate for the Department of Justice to comment on the decision.[29] The right of appeal lies elsewhere. Issues arising out of the controversy now are pending before the Federal Labor Relations Authority[30] and at least one Federal court.[31] There is a long line of opinions of the Attorneys General to the effect that it is not proper to express an opinion upon a judicial question that is pending in, or must ultimately be decided by, the courts.[32] Accordingly, we decline to comment on the Council's decisions in these cases.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[26] 32 U.S.C. § 102. Section 709(e)(2) deals with the military security standards applicable to individual members of a reserve component. It does not define the primary function of the National Guard.

[27] *Cf., Third Nat'l Bank* v. *Impac. Limited, Inc.* 432 U.S. 312 (1977), *Jarecki* v. *G.D. Searle & Co.,* 367 U.S. 303, 307 (1961).

[28] Exec. Order No. 11491, § 11(c)(4).

[29] *See* 11 Op. Att'y Gen. 407, 408 (1865); 10 Op. Att'y Gen. 347, 349 (1862); 6 Op. Att'y Gen. 289 (1854).

[30] The Federal Labor Relations Authority was created by the Civil Service Reform Act of 1978, 5 U.S.C. § 7105. It is the "successor" to the Council. Section 7123 of the Act provides for judicial review of final orders of the Authority.

[31] *See, Nevada Nat'l Guard* v. *United States,* No. 79-7235 (9th Cir., filed May 31, 1979).

[32] *See, e.g.,* 41 Op. Att'y Gen. 266, 272 (1956); 37 Op. Att'y Gen. 34, 42 (1932); 33 Op. Att'y Gen. 86, 87 (1922).