UNITED STATES of America, Plaintiff,

v.

Larry PHILLIPS, Luke Gravely, Clifford Mulbarger, Harry T. Johnson, Gloria Schneider, John Schmitt, and Arthur Stafford, Defendants.

No. 81 C 4371.

United States District Court,
N. D. Illinois, E. D.

Oct. 16, 1981.

See also, 527 F.Supp. 1344.

Frederick H. Branding, Linda A. Wanzenski, Asst. U. S. Attys., Chicago, Ill., for plaintiff.

Michael A. Stiegel, Arnstein, Gluck & Lehr, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The most recent dispute in this long, drawn-out battle between the Professional Air Traffic Controllers ("PATCO") and the Federal Aviation Administration ("FAA") involves the activities of the defendants at the Air Route Traffic Control Center in Aurora, Illinois. On October 14, 1981, the attorneys for the parties, together with PATCO and FAA representatives, met informally with the Court in chambers. At this time the government brought to the Court's attention the fact that the defendants had begun erecting various structures (including lean-tos and a mailbox) outside the main gates of the Aurora facility, stockpiling wood and other fuel items in preparation for an apparent siege-like occupation of the premises, and building fires in steel drums or otherwise in the area in conjunction with their virtual round-the-clock vigil at the facility. The parties had been operating subject to an agreed order dated September 13, 1981, which spelled out the responsibilities of the government and the defendants with respect to the picketing that was to be allowed to continue at the Aurora facility. It was the government's position that the defendants' activities exceeded the bounds of the agreed order in that they endangered the health and safety of FAA employees and residents of the area and that they interfered with the effective operation of the FAA facility. The defendants maintained that they were acting in accord with the agreed order. The Court directed the parties to attempt to reach an agreement with respect to the type of activity that would be permitted at the facility and stated that if the parties could not reach such an accommodation, a formal hearing would be required for the Court to resolve any disputes.

The parties indicated that they would attempt to resolve the alleged difficulties by October 16, 1981. Having failed to reach such an accommodation among themselves, a hearing was held on October 16, 1981. The single witness at the hearing, Douglas French, Deputy Chief of the Aurora facili-

ty, testified as to the existence of the structures outside the facility and the nature of defendants' activities. Defendants did not dispute the government's evidence; rather, they contended that their conduct was permissible under the terms of the agreed order and the first amendment. The government contended that the defendants' conduct was beyond the pale of the agreed order and that it exceeded the bounds of informational picketing which the Court had indicated it would allow on the FAA property at Aurora.

At the conclusion of the hearing, the Court indicated that, in its opinion, the defendants' conduct went beyond the informational picketing allowed by the agreed order * under which the parties had been operating and that the first amendment did not encompass the right to maintain the siege-like atmosphere that the defendants had apparently created by erecting semi-permanent structures outside the Aurora facility. Accordingly, the Court indicated that it would issue an order requiring the removal of existing structures, a prohibition on new structures, and the discontinuance of the fires and other indicia of a permanent occupation of the premises such as a mailbox, etc.

That same day after the hearing, the Court visited the Aurora facility in order to ascertain for itself the extent of the defendants' activities. On October 14, the Court had indicated it might visit the Aurora facility within the next few days and would invite counsel for both sides to attend. In part, our visit was motivated by the failure of the government to bring forth any evidence at the hearing in support of its charges—as alleged at the October 14 conference—of the existence of health and safety risks at the facility and the interference with the effective operation of the facility. Counsel for the government and for defendants were invited to accompany the Court to Aurora, but neither side accepted the invitation. In light of our observations during the Aurora visit, the Court is now inclined to modify its prior order entered at the conclusion of the hearing and, construing the government's motion as effectively seeking temporary injunctive relief, to issue a temporary restraining order for the reasons set forth below.

Although the government had asserted during the October 14 in-chambers discussions between the Court and counsel and principals for both sides, that the defendants' activities at the Aurora facility constituted a health and safety hazard and impeded the effective operation of the Aurora center, no evidence in this regard was adduced at the hearing itself. After viewing the situation at the Aurora facility, however, the Court is of the opinion that the defendants' activities may very well constitute a hazard to the safety of persons entering and leaving the facility, as well as to residents of the area, and that the totality of the circumstances at the facility may interfere with the safe and proper functioning of the center. Specifically, the structures that the defendants have erected tend to obscure traffic visibility for those FAA employees or others leaving the facility by automobile, as do the extended barricades at the gate. The Court during its visit to the site heard complaints of rocks being thrown at cars from behind the structures and the barricades, as well as other impediments to the ingress and egress of vehicles to and from the facility. Profanity was yelled by some defendants as non-striking controllers entered and exited the facility. Some cars allegedly were spat upon. Some of the defendants were observed by the Court taking photographs of incoming and outgoing vehicles and copying license plate numbers. In some instances, the drivers of autos leaving and entering the facility appeared anxious to speed away from the point of confrontation as soon as possible. In sum, the totality of defendants' activi-

* The agreed order provides that "the defendants will not intimidate and/or threaten any FAA employees entering or leaving the [Aurora facility and] . . . shall work to implement both the *spirit* and letter of this order so as to assure that the rights of FAA employees . . . are not violated." (Emphasis added).

ties, although perhaps not individually threatening or intimidating, appear to significantly impede the efficient operation of the air traffic control center.

In order to support the entry of a temporary restraining order, it is well settled that the movant must show the existence of irreparable harm and the absence of an adequate remedy at law, a probability of ultimate success on the merits, that the threat of harm to the movant outweighs the harm that would result to the opposing party should the injunction issue, and that the public interest will not be disserved by the granting of temporary injunctive relief. *Ohio-Sealy Mattress Manufacturing Co. v. Duncan*, 486 F.Supp. 1047, 1052 (N.D.Ill. 1980). In the case at bar, these requirements are clearly met.

The potential harm to the health and safety of FAA employees and residents of the area as well as the impairment of the efficient operation of the Aurora facility satisfies the threshold element of irreparable harm. Moreover, although picketing is clearly expressive activity entitled to first amendment protection, as this Court has emphasized on many occasions during these proceedings, *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 2289, 65 L.Ed.2d 263 (1980), courts have consistently held that it may be subject to reasonable time, place, and manner restrictions in order to further significant government interests. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 98, 92 S.Ct. 2286, 2291, 33 L.Ed.2d 212 (1972). Most importantly, however, the harm to the defendants should they be required to dismantle their shanties, lean-tos, and assorted structures clearly is insignificant when compared to the potential harm to the government and its employees should they be allowed to remain standing. If the government is ultimately unable to prevail on the merits of its case, the defendants could readily rebuild the structures with a minimum of time and effort. By contrast, should there be a loss of life due to the obstruction of traffic at the Aurora facility, or if the facility itself is rendered incapable of operating as it must, the harm to innocent persons and to legitimate government interests would be substantial. The public interest clearly favors a temporary disruption of the defendants' activities until this matter can be properly resolved after a hearing on the merits.

Accordingly, the Court will schedule a full preliminary injunction hearing on this matter for Wednesday, October 21, 1981, at 10:00 a. m. At that time, the Court expects the government to be prepared to proceed with evidence as to the potential and actual dangers engendered by the defendants' activities at the Aurora facility. In addition, the parties are to be ready to proceed on the contested issue of the ownership of the property upon which the defendants have erected their structures and barricades and upon which they are conducting their picketing activities. In the meantime, it is ORDERED, ADJUDGED and DECREED that defendants, their agents, and all others acting in concert or association with them, whether members of the Professional Air Traffic Controllers Association ("PATCO") or not shall:

1. Remove immediately all sheds, shanties, lean-tos, or any other shelter located on the premises owned and operated by the Federal Aviation Administration at the Air Route Traffic Control Center, Aurora, Illinois ("Chicago Center");

2. Remove immediately all fire drums or similar containers, stockpiled wood, and all other items used as fuel, and all other items associated with the building and use of fires at the Chicago Center;

3. Remove immediately the mailbox or any similar receptacle intended for the delivery of mail;

4. Remove immediately all articles and structures hanging on the fence at the Chicago Center.

It is further ORDERED, ADJUDGED and DECREED that defendants, their agents, and all others acting in concert or association with them, whether members of the Professional Air Traffic Controllers Association ("PATCO") or not, are prohibited from engaging in the same types of activities as outlined in this order.

This order will be stayed until 12:00 noon on October 17, 1981, so that the defendants may appeal to the United States Court of Appeals for the Seventh Circuit if they so desire. It is so ordered.