Mark DONHAM, Plaintiff,

v.

U.S. DEPT. OF AGRICULTURE; Clayton Yeutter, Secretary U.S. Forest Service; F. Dale Robertson, Chief of U.S. Forest Service, Eastern Region; Floyd Marita, Regional Forester, Shawnee National Forest; Rodney Sallee, Forest Supervisor and C & G Timber, Defendants.

Civ. No. 89–4226.

United States District Court,
S.D. Illinois.

Sept. 8, 1989.

**986**

Mark Donham, Brookport, Ill., pro se.

Stephen B. Clark, Asst. U.S. Atty., East St. Louis, Ill., Leslie M. Auriemmo, Office of General Counsel, U.S. Dept. of Agr., Milwaukee, Wis., Thomas F. Crosby, Marion, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on the plaintiff's pro se petition for a temporary restraining order. Plaintiff is seeking to restrain the defendants from proceeding with a timber sale and harvest in an area of the Shawnee National Forest known as the Town Hall Sale region. The Court held an evidentiary hearing on September 5, 1989.

Plaintiff is a native Southern Illinoisan with a noteworthy concern for environmen-

tal issues in general, and the Shawnee National Forest in particular. Plaintiff's concern for environmental issues endemic to Southern Illinois led him to co-found two environmental groups: the Association of Concerned Environmentalists (ACE) and the Regional Association of Concerned Environmentalists (RACE).[1] Although plaintiff's complaint alleges that members of ACE and RACE would be directly affected by the proposed timber harvest in Town Hall, the evidentiary hearing revealed that the plaintiff himself had a much more tenuous connection to Town Hall. Namely, plaintiff lives 90 miles from Town Hall and has visited the area only once. Moreover, plaintiff's visit on that occasion was in response to the proposed harvest and in reference to his opposition to clear cutting and group selection harvesting methods.

### I. Plaintiff's Standing.

Plaintiff's meager association with the Town Hall Sale area, which is the focus of his petition for a temporary restraining order, raises the issue of whether plaintiff can meet the threshold requirement of standing to sue. Those who do not possess standing may not litigate as plaintiffs in courts of the United States. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). The plaintiff is contesting the actions of a federal administrative agency. The question of standing, therefore, is controlled not only by Article III of the Constitution, but by § 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 702 (1977). *City of Milwaukee v. Block*, 823 F.2d 1158, 1169 (7th Cir.1987).

In order to meet the standing requirement of Article III, a plaintiff must demonstrate that he has "personally suffered some actual or threatened injury." *Gladstone, Realtors v. Village of Belwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). The Court has further held that

---

**1.** At the September 5, 1989 evidentiary hearing, plaintiff sought to represent the interests of ACE and RACE. The Court denied this request because plaintiff, as a pro se litigant, could only represent his own interests. *See First Foundation v. Village of Brookfield*, 575 F.Supp. 1207 (N.D.Ill.1983).

an injury to the environment is sufficient to support standing as to any plaintiff who uses the affected environment. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). These cases do, however, require that the plaintiff actually "use" the land in question in order to have standing to redress perceived environmental concerns. *Sierra Club*, 405 U.S. at 735, 92 S.Ct. at 1366. And while some circuits have held that isolated uses can give rise to standing, *see, e.g., Animal Welfare Institute v. Kreps*, 561 F.2d 1002, 1007–1010 (D.C.App.1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978), no court has gone so far as to hold that a single visit to land, prompted by revelations arising during an ongoing environmental dispute over the use of the land, will give rise to standing should that dispute ripen into litigation. Therefore, this Court finds that the plaintiff lacks standing under Article III of the Constitution to bring this dispute before the Court.

## II. The Merits of Plaintiff's Request for a Temporary Restraining Order.

■ Even if plaintiff had established standing to bring this matter before the Court, his petition for a temporary restraining order would nevertheless be denied for failure to establish adequate grounds for the issuance of such an order. In order to support the entry of a temporary restraining order, the movant must show (1) the existence of irreparable harm, (2) the absence of an adequate remedy at law, (3) a probability of ultimate success on the merits, (4) that the threat of harm to the movant outweighs the harm that would result to the opposing party should the order be issued, and (5) that the public interest will not be disserved by the granting of temporary injunctive relief. *United States v.*

*Phillips*, 527 F.Supp. 1340, 1343 (N.D.Ill. 1981). Plaintiff has failed to demonstrate a probability of ultimate success on the merits of his claim. He has also failed to establish that he has suffered irreparable harm which outweighs the harm that would result to the defendants should the order be issued.

The gist of plaintiff's claim on the merits is twofold: (1) that the Forest Service used deficient methodology in its Environmental Assessment of the Town Hall Sale and in its Decisional Notice and Finding of No Significant Impact, and (2) that the Town Hall Sale should be made the subject of an environmental impact statement.[2] The harm which plaintiff alleges will arise from these claimed deficiencies is that old hardwood trees will be harvested without an adequate showing that they will regenerate, that certain species of plant and wildlife might be disrupted, that the effects of the harvest on soil and water conditions has not been adequately considered, and that the overall aesthetic quality of the Town Hall area will be changed.

Plaintiff's claim that the Forest Service used deficient methodology in its preparation of the environmental assessment of the Town Hall Sale will likely fail on its merits.

40 C.F.R. 1502.24 provides:

Agencies shall insure the professional integrity, including scientific integrity, of the discussions and analysis in environmental impact statements. They shall identify any methodologies used and shall make explicit reference by footnote to the scientific and other sources relied upon for conclusions in the statement. An agency may place discussion of methodology in an appendix.

As counsel for defendants correctly notes, 1502.24 does not adopt any specific methodology. A much more basic fault with plaintiff's claim, however, is that the above section relating to scientific methodology sets standards for an environmental impact

2. These claims can be gleaned from the plaintiff's "Complaint" in the instant action and from his "Notice of Appeal" submitted August 15, 1989 to the Regional Forester. Since the plaintiff alleges as his "First Claim for Relief" that the Regional Forester wrongly denied his Notice

of Appeal, the Court will consider the allegations therein, and the other allegations contained in his Complaint, as appropriately before the Court pursuant to the liberal pleading rules afforded pro se litigants. *See Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir.1983).

statement, not an environmental assessment. The relevant provision regarding environmental assessments is found at 40 C.F.R. 1508.9 which states:

"Environmental Assessment:"

1) Means a concise public document for which a Federal agency is responsible which serves to:

(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

(2) Aid an agency's compliance with the Act when no environmental impact statement is necessary.

(3) Facilitate preparation of a statement when one is necessary.

(b) Shall include brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted.

The Court finds that on the basis of these criteria, the plaintiff will not likely prevail on any claim respecting the sufficiency of the instant environmental assessment.

▆▆▆ Plaintiff will also most likely fail on his claim that the Forest Service should prepare an environmental impact statement before proceeding with the Town Hall Sale. Pursuant to 42 U.S.C. § 4332(2)(C), an agency shall prepare an environmental impact statement where "major Federal actions significantly [affect] the quality of the human environment." An agency's decision not to prepare an environmental impact statement will be set aside only if it is an abuse of discretion not to prepare one. *River Road Alliance, Inc. v. Corps of Engineers of United States Army,* 764 F.2d 445, 449, *cert. denied,* 475 U.S. 1055, 106 S.Ct. 1283, 89 L.Ed.2d 590 (7th Cir.1986). Furthermore, if an agency allows public input into its preparation of an environmental assessment, its conclusion that no environmental impact statement is warranted is entitled to even further deference. *Id.* at 451. Here, the Forest Service solicited, and considered, the concerns expressed by the public. *See* Environmental Assessment at 2.

In light of these factors, the Court considers it unlikely that plaintiff will prevail on his claim that an environmental impact statement should be prepared before the Town Hall Sale can proceed. The Forest Service's conclusion that this is not a major federal action having significant impact on the human environment finds adequate support from the fact that the proposed harvesting will take place in less than 40 acres of a 260,000–acre forest. Further, while the plaintiff alleges that the harvest could have an adverse effect on some species within the Town Hall Sale area, he falls short of alleging any species will be obliterated from the area, and his own expert, Dr. Jean Graber, admitted that the adverse effect on some species will be offset by the beneficial effect the harvest would have on others. In light of these facts, the Court finds it unlikely that the Forest Service will be found to have abused its discretion by not preparing an environmental impact statement.

Plaintiff also fails to establish that he will suffer irreparable harm and that the harm he will suffer outweighs that which will be suffered by the defendants. While it may be possible that the trees which are cut will be irreparably harmed, along with the soil, plants and animals, it is the possible harm to the *plaintiff* which must guide this Court's inquiry. As was noted previously, plaintiff has failed to establish that he has suffered sufficient harm or threat of harm to qualify for standing, let alone sufficient harm to entitle him to extraordinary injunctive relief.

In summary, the Court finds that the plaintiff lacks standing to maintain this action and that even if the plaintiff had standing he has not shown that he is entitled to injunctive relief.

Accordingly, plaintiff's Petition for a Temporary Restraining Order (Document No. 2) is DENIED.

IT IS SO ORDERED.