**REGIONAL ASSOCIATION OF CONCERNED ENVIRONMENTALISTS, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.**

**Civ. No. 90–4085.**

United States District Court,
S.D. Illinois,
Benton Division.

July 26, 1990.

---

William Cronin, Mark Donham, Joseph Glissom, Melinda Harmon and Jacqueline Turner, pro se.

Stephen B. Clark, Asst. U.S. Atty., East St. Louis, Ill. and Thomas F. Crosby III, Marion, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court is the plaintiffs' Motion for Preliminary Injunction. The plaintiffs are seeking to halt a timber sale in an area of the Shawnee Forest which is close to Fairview Church in Jackson County, Illinois. On June 11 and 12, 1990, Magistrate Philip M. Frazier held hearings regarding this matter and issued a Report and Recommendation (Document No. 24). In his Report and Recommendation, Magistrate Frazier found that four of the five individual plaintiffs had standing to bring this claim. Nevertheless, the Magistrate recommended that those plaintiffs' request for injunctive relief be denied because they cannot show that they are entitled to extraordinary injunctive relief. Both the plaintiffs and the defendants filed objections to the Report and Recommendation. On July 2, 1990, this Court ordered the defendants to stay execution of the timber sale until this Court had decided the plaintiffs' Motion for Preliminary Injunction. As a preliminary matter, the Court orders the Defendants' Motion to Dismiss Party Plaintiff Race and to Dismiss or Substitute Party Defendants (Document No. 16) STRICKEN FROM THE RECORD for failure to comply with Local Rule 6.

### I. Facts

The subject of this dispute is an area of the Shawnee Forest known as the Fairview Timber Sale. The Fairview Timber Sale area is a 661 acre tract of the Shawnee National Forest. Mature hardwood makes up most of the sale area, although there are a few scattered pine stands.

The plaintiffs are the Regional Association of Concerned Environmentalists (RACE), William Cronin, Mark Donham, Joseph Glisson, Melinda Harmon, and Jacqueline Turner. All individual plaintiffs appear *pro se*. RACE is unrepresented. The plaintiffs are all residents of Southern Illinois and all have a notable concern for environmental issues endemic to this region. Furthermore, plaintiffs Glisson, Harmon, Cronin and Turner all live close to the Fairview Timber Sale region and use the area often for recreation and solitude.

Plaintiff Donham, while not living as close to the area, has a sincere concern for the trees and habitat in the Fairview Timber Sale region.

The defendants are the United States Department of Agriculture, Clayton Yeutter, F. Dale Robertson, Floyd Marita, and Rodney K. Sallee. Yeutter is the Secretary of the United States Department of Agriculture. Robertson is the Chief of the United States Forest Service. Marita is the Regional Forester for the Eastern Region of the United States Forest Service. Sallee is the Supervisor of the Shawnee National Forest.

On March 4, 1985, then Shawnee Forest Supervisor Kenneth Henderson signed the pertinent documents implementing 27 timber sales. One of those 27 sales was the Fairview Timber Sale. The Fairview Timber Sale was to be harvested in compliance with the Forest Service's 3.2 management prescription using an even aged silvicultural system with clearcutting as the harvesting method. Later, Supervisor Sallee suspended the Fairview Timber Sale and ordered that a new Environmental Assessment be conducted for the sale area. Sallee also announced a new Public Comment period with regard to the sale. On January 16, 1990, Sallee signed the pertinent documents re-authorizing the Fairview Timber Sale. These documents, which are important to this litigation, are an Environmental Assessment, a Decisional Notice and a Finding of No Significant Impact. The documents evinced the defendants intention to reimplement the Fairview Timber Sale under terms different than before. The most important change was that the timber sale would proceed using an uneven aged silvicultural system with the group selection harvesting method.

In early February 1990, the plaintiffs appealed Sallee's decision to the Regional Forester. They requested an immediate stay and asked the Forest Service to cancel the Fairview Timber Sale. The Forest Service consolidated the plaintiffs' appeals. On February 15, 1990, the Regional Forester denied the Plaintiffs' request for a stay of the Fairview Timber Sale. On April 13, 1990, the Regional Forester upheld Sallee's decision to implement the Fairview Timber Sale. On April 16, 1990, the plaintiffs brought this suit, seeking to overturn the Forest Service's decision.

## II. Analysis

### A. General Considerations

#### 1. The Representation of RACE

■ In their Complaint and request for injunctive relief, the board members of RACE request that plaintiff Mark Donham be allowed to represent RACE's interests before this Court. The Court must deny this request. Mr. Donham is not a member of the bar. Consequently, he may only represent his own interests before this Court. See First Foundation v. Village of Brookfield, 575 F.Supp. 1207 (N.D.Ill. 1983); Donham v. U.S. Dept. of Agriculture, 725 F.Supp. 985, 986 n. 1 (S.D.Ill. 1989).

#### 2. The Plaintiffs' Standing

In his Report and Recommendation, the Magistrate concluded that plaintiffs Cronin, Glisson, Harmon, and Turner have standing to bring this dispute while plaintiff Donham does not. Only Donham filed an objection to the Magistrate's recommendation with respect to standing. Accordingly, the Magistrate's findings on standing with respect to Cronin, Glisson, Harmon, and Turner are ADOPTED by this Court. The Court will now address the issue of Donham's standing.

■ In order to meet the standing requirements of Article III of the Constitution, a plaintiff must demonstrate that he has "personally suffered some actual or threatened injury." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). The Supreme Court has further held that an injury to the environment is sufficient to support standing as to any plaintiff who uses the affected environment. Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). The cases make clear, however, that one must actually "use" the land in order to have standing. Furthermore, this Court noted

in *Donham v. U.S. Dept. of Agriculture*, 725 F.Supp. 985, (S.D.Ill.1989), that a single visit to land, prompted by revelations arising during an ongoing environmental dispute over the use of the land, would not give rise to standing should that dispute ripen into litigation. *Id.* at 987. Here, the plaintiff testified that he visited the Fairview Timber Sale approximately a dozen times in the past year. (Transcript at 50). The Magistrate found, however, that these visits were "not for the recreational purposes pursued by the other plaintiffs." (Document No. 24 at 5–6). A review of the record reveals that the Magistrate was correct in his assessment. It appears that Donham's visits occurred after the Forest Service announced the Fairview Timber Sale. It also appears that Donham made those visits as part of his ongoing crusade of environmental activism. To allow the plaintiff standing under these circumstances would, in effect, allow the plaintiff to manufacture his own standing. This Court is unwilling to hold that one may manufacture standing. Accordingly, the Magistrate's recommendation that plaintiff Mark Donham be dismissed for lack of standing is ADOPTED.

**B. The Motion for Preliminary Injunction**

In order to support the entry of a preliminary injunction, the plaintiffs must show: (1) a probability of success on the merits, (2) the existence of irreparable harm, (3) the absence of an adequate remedy at law, (4) that the threat of harm to the plaintiffs outweighs the harm that would result to the opposing party should the order be issued, and (5) that the public interest will not be disserved by granting the relief. *Donham v. U.S. Dept. of Agriculture*, 725 F.Supp. 985, 987 (S.D.Ill.1989).

**1. Probability of Success on the Merits**

■ The plaintiffs are challenging the propriety of a Federal agency's actions. Their chosen task is not an easy one. This Court may not substitute its judgment for that of the Forest Service. *Ford v. Train*, 364 F.Supp. 227, 233 (D.C.Wis.1973). Our review of the actions of the Forest Service is limited to determining whether there is substantial evidence to support its actions and whether the applicable rules were followed. *Lord v. Lehman*, 540 F.Supp. 125, 129 (D.C.Pa.1982). Thus, regardless of whether this Court agrees with the Forest Service's decision or whether there is more than one solution to the administrative problem, this Court is required to abide by the agency decision if it is supported by substantial evidence and if the applicable rules were followed. *West End Neighborhood Corp. v. Stans*, 312 F.Supp. 1066, 1068 (D.C.D.C.1970).

In his Report and Recommendation, Magistrate Frazier found that the plaintiffs' Complaint and the proof offered during the evidentiary hearing gave rise to three issues: (1) whether the Forest Service violated the law when it adopted the uneven aged/group selection harvesting method, (2) whether the Fairview Sale area should be recognized as a "forest interior management unit" (FIMU), and (3) whether the decision to harvest by group selection is an implementation of proposed amendments to the Forest Plan amounting to a major federal action that requires a separate environmental impact statement.

**a. Adoption of the Group Selection Harvesting Method**

■ The plaintiffs maintain that the Forest Service's decision to implement an uneven aged silvicultural system and selective harvesting method violates the National Forest Management Act and Management Prescription 3.2 of the controlling Forest Plan.[1] The Magistrate recommends that this Court find that the plaintiffs have little likelihood of success on this claim because Management Prescription 3.2 provides that uneven-aged management will be used if used to satisfy any of the enumerated crite-

---

**1.** The Forest Plan governing the Shawnee Forest divides the forest into several areas known as Management Prescriptions. Management Prescriptions are selected considering the geographical aspects of the particular region, the biological concerns of that region, and the proposed uses for each area. The Fairview Timber Sale area falls within a 3.2 management prescription which allows for timber harvesting.

ria. One of the enumerated criteria is "visual quality objectives."[2] The Magistrate found that the Forest Service reached the decision that visual quality objectives would be better reached by implementing an uneven-aged management system. The Magistrate also found that this decision was not arbitrary, and thus he recommends that this Court reject the plaintiffs claim. The plaintiffs maintain, however, that the visual quality objective rationale offered by the Forest Service is a sham. The plaintiffs claim that there is nothing in the administrative record that indicates that the change from even aged management to uneven aged management was proposed for visual quality objectives. The plaintiffs are wrong. The Decision Notice and Finding of No Significant Impact that adopted uneven aged management indicates that even aged management (clearcutting) was not selected because clearcutting "would not meet the established visual quality objectives...." There could not be a more definitive statement that the Forest Service rejected clearcutting in the Fairview Timber Sale area because it decided clearcutting would not meet visual quality objectives. Furthermore, the Magistrate was correct in his assessment that the Forest Service's determination was supported by substantial evidence. The decision that visual quality objectives would be better served by implementing an uneven-aged management system was only reached after Sallee assembled an interdisciplinary team to assess the impact of the Fairview Timber Sale. This interdisciplinary team included David Johnson, a forest landscape architect employed by the National Forest Service. During the evidentiary hearing, Mr. Johnson testified to a visual resource analysis he performed in the Fairview area. He followed the Forest Service's standards in making his evaluation. The rest of the interdisciplinary team concurred in his opinion that clearcutting would not achieve the visual quality objectives in the Fairview Timber Sale area. The Court finds this evidence sufficient to uphold the agency's decision to adopt uneven-aged management with a group selection harvesting method.

b. Failure to Designate the Fairview Area as a Forest Interior Management Unit (FIMU)

■ The plaintiffs also claim that the Forest Service improperly failed to designate the Fairview Timber Sale area a FIMU. The purpose of a FIMU is to enhance the habitat for neotropical migrant bird species. According to Management Prescription 3.2, before an area can be considered a FIMU it must present a block of solid national forest ownership possessing the following characteristics: (1) at least 1100 acres, (2) central hardwood types, 58 percent over 50 years old, (3) favorable topography to access area, and (4) be capable of developing into a forest with a closed hardwood canopy except for permanent wildlife openings, water holes, and roads. An area designated a FIMU is subject to a special harvest plan.

The Magistrate found that the plaintiffs failed to adduce sufficient evidence from which he could predict that they have any likelihood of success on the merits of their FIMU claim. He noted that the Fairview Timber Sale area consists of about 661 acres within a 3.2 Management Prescription. The western border is adjacent to a 9.2 Management Prescription, and the southern border is adjacent to an 8.2 Management Prescription. These adjacent areas are inappropriate for consideration as part of a FIMU. Furthermore, several parcels of private ownership are adjacent to the Fairview area. These areas are also inappropriate for consideration as part of a FIMU. The testimony of witnesses and the exhibits offered into evidence provide overwhelming proof that, as the FIMU regulations now stand, it is impossible for the plaintiffs to establish that the Fairview Timber Sale area qualifies as a FIMU.

■ In fact, the plaintiffs appear to concede that they cannot prevail on their FIMU claim under the existing FIMU regu-

---

**2.** The Court assumes that "visual quality objectives" is the government's way of saying that it wants the forest to look good.

lations. Instead the plaintiffs argue that there are now in progress changes to the FIMU regulations as part of the supplemental Environmental Impact Statement which would allow the 9.2 and 8.2 Management Prescription areas to be considered for FIMU status. Furthermore, they note that these proposed regulations do not preclude a large block of contiguous forest from being designated a FIMU just because it includes private land. Plaintiffs then argue that allowing the Fairview Timber harvest to proceed in light of these proposed changes would violate 40 C.F.R. § 1506.1(a). Section 1506.1(a) provides that until the supplemental EIS is completed, the Forest Service can take no action which would "limit the choice of reasonable alternatives." *Id.* The plaintiffs contend that allowing the Forest Service to proceed with the Fairview Timber Sale would eliminate the area from later consideration as a FIMU and thus illegally limit the choice of reasonable alternatives. The plaintiffs may well be correct in their assumptions. They failed, however, to prove their assumptions. There was no testimony tending to prove that even if the now excluded areas were added to the Fairview Timber Sale area that the resulting block would constitute a FIMU. In fact, the Environmental Assessment of the Fairview Timber Sale indicates that with respect to the 8.2 Management Prescription Area it would not be included even under the new guidelines because it "contains too many open areas." Environmental Assessment at 74. This Court is not allowed to assume that the remaining areas do not have similar features which would prevent it from qualifying for FIMU status. The burden of proof was on the plaintiffs. They failed to discharge their burden on this issue.

### c. Failure to Prepare a New Environmental Impact Statement

■ The plaintiffs' final claim is that the decision to authorize uneven-aged management violates the National Environmental Policy Act, (NEPA) 42 U.S.C. § 4321, *et seq.* The plaintiffs contend that the Forest Service's decision to switch from clearcut-

ting to group selection harvesting constitutes a significant departure amounting to a major federal action. The gist of their claim appears to be that the Forest Service is attempting to implement proposed amendments to the Forest Plan prior to the completion of an Environmental Impact Statement. NEPA requires a separate Environmental Impact Statement for any major federal action significantly affecting the human environment. 42 U.S.C. § 4332(2)(C)(i).

There is some confusion regarding the plaintiffs' claim. The Magistrate assumed that the plaintiffs were complaining because the Forest Service decided to implement group selection harvesting without preparing a new Environmental Impact Statement. The plaintiffs, in their objection to the Magistrate's Report and Recommendation, maintain that the issue is slightly different. They contend that there is already a supplemental Environmental Impact Statement in progress and the issue is whether the Fairview Timber Sale can proceed before it is completed. The resolution of either issue is, however, the same. Group selection harvesting is not an amendment to the current plan: it is authorized by the plan and Management Prescription 3.2. The Magistrate correctly concluded that since the plaintiffs are unlikely to prove that uneven-aged management amounted to an unlawful departure from Management Prescription 3.2, then logic requires a finding that plaintiffs will similarly be unable to prove their NEPA claim.

### 2. The Other Factors Required for Injunctive Relief

Because of the Court's resolution of the preceding issue, it need not reach the remaining factors relevant to the grant of extraordinary injunctive relief. The Court has, however, reviewed the Magistrate's recommendations on those issues and it ADOPTS the Magistrate's findings on those issues.

### III. Summary

The Court ADOPTS the Magistrate's Report and Recommendation. The plaintiffs'

Motion for Preliminary Injunction is DE-NIED. (Document No. 2). The Defendants' Motion to Dismiss Party Plaintiff RACE and to Dismiss or Substitute Party Defendants (Document No. 16) is OR-DERED STRICKEN FROM THE RECORD for failure to comply with Local Rule 6. The stay previously imposed by the Court in this matter is LIFTED.

IT IS SO ORDERED.